## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **TONY WOLFE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 3:11-0751** |
| | ) | **JUDGE SHARP/KNOWLES** |
| | ) | |
| **PAUL ALEXANDER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court upon a Motion for Summary Judgment filed by

Defendant, Dr. Paul Alexander. Docket No. 57. Defendant Alexander has filed a supporting

Memorandum of Law (Docket No. 57-2), a Statement of Undisputed Facts (Docket No. 58), and

his own Affidavit (Docket No. 57-2). Plaintiff has submitted an "Opposition" to the Motion

(Docket No. 60), a supporting Memorandum (Docket No. 61), and his own Affidavit (Docket

No. 62).

This is a pro se in forma pauperis action filed pursuant to 42 U.S.C. § 1983 by an inmate

in the custody of the Tennessee Department of Correction. Docket No. 1. At all times relevant

to the incidents referred to in the Complaint, Plaintiff was housed at DeBerry Special Needs

Facility. Plaintiff has filed a Complaint and an Amended Complaint. Dockets Nos. 1, 11.

Plaintiff's "Statement of Claim" in his original Complaint states in full as follows:

On 9/8/08 at approximately 10:15 a.m. in went to Dr. Paul
Alexander for confirmation as to what I'm suppose to have as a
(dialysis patient). Pertaining to commissary (Items). I was allowed
purcash this "Commissary" from commissary. Only to have it
conficated by Cpl. Clifford Woods. I was on punitive segragation.
Upon confications there was an "memo" sent out. stating that, no
(dialysis patient). can't buy, have or purcash (commissary food
items) nor can we sign-off the (Moderified Diet) as (Dialysis
Patients) per Dr. Paul Alexander M.D. Monique Taylor R.D.
Deborah Johnson Asst. Warden, Ronald Colson Ex-D.W. Jennie
Jobe Deputy Warden. Mark King X-M.D. Tim McConnell M.D.
Tia Moore P.A Julia Campbell cpl. Lois M. Deberry's (Special
Needs Facility). Security staff and medical care team. has
continued to violate our right to refuse medical treatment and/or
Modified Diet. Also our rights to equality is being violated.
Therefore we feel that as (Dialysis Patients) we are being singled-
out and discriminated against, collectively. In our medical needs
are being neglected.

Docket No. 1, p. 4-5.

The body of Plaintiff's Amended Complaint states, in its entirety:

On 9/8/2008 at approximately 10:15 a.m. Cpl Clifford Woods was
observing commissary being passed out. Cpl. Woods then went to
Dr. Paul Alexander for confirmation as to what we are supposed to
have as a dialysis patient (pertaining to commissary items). We
were allowed to purchase commissary, only to have it confiscated
by Cpl. Woods (whom is not medical staff, nor a dietician).

Upon commissary being confiscated and taken away (from only
dialysis patients) there was a "memo" sent out (included in packet)
stating that no dialysis patient can buy, have, or purchase food
items from commissary. Nor can we sign off of the modified diet
as dialysis patients. Per Dr. Alexander M.D. Monique Taylor R.D,
Debra Johnson Assistant Warden, Ronald Coloson former deputy
Warden, Jennie Jobe Warden, Mark King former M.D, Tim
McConnell M.D., Tia Moore P.A., Julia Campbell Cpl, Deberry
Special Needs Facility security staff, and medical care team has
continued to violate our rights to refuse Medical Treatment, and/or
modified diet.

As a dialysis patient we have been singled out, and discriminated

2

against. Our rights to equality are and have been violated, collectively. Our medical needs have been neglected. We had to go without a dietician which is a part of our dialysis treatment to have a dietician. Dialysis patients are entitled to have the same rights as any other inmate. We are singled out and harassed due to our illness.

Docket No. 11.

It appears that Plaintiff is raising two claims with regard to Dr. Alexander. First, Plaintiff claims that he is being improperly denied the opportunity to purchase food from the commissary upon the orders of Dr. Alexander. Second, Plaintiff claims that he is not allowed to "sign off of the modified diet" he receives as a dialysis patient. Docket No. 11, p. 1.

Defendant raises five grounds in the instant Motion: (1) Defendant's claims are barred by the one year statute of limitations; (2) denial of access to commissary food items does not violate the Eighth Amendment; (3) because Plaintiff has not alleged that he is a member of a protected class, he has failed to state a claim under the Equal Protection Clause; (4) Dr. Alexander's decisions were for Plaintiff's health, which is not an irrational basis, and therefore, Plaintiff cannot make a "class-of-one" claim under the Equal Protection Clause; and (5) because Dr. Alexander's decisions were based on sound medical judgment, Plaintiff cannot prove the subjective component of an Eighth Amendment claim. Docket No. 57.

In his Affidavit, Defendant Alexander states in part as follows:

2.      I am the medical director at Lois DeBerry Special Needs Facility in Nashville, Tennessee.

. . .

4.      During Mr. Wolfe's incarceration , I provided him with medical treatment.

5.      I have never refused to provide medical treatment to Mr. Wolfe

3

that was medically necessary. I am familiar with Mr. Wolfe's medical chart and I know that no member of the medical staff has refused to provide Mr. Wolfe with medically necessary treatment.

6.      The restrictions placed on dialysis patients' access to food from the commissary are for medical reasons.

7.      Because of their health problems, it is medically necessary to limit the types of foods they eat.

8.      Dialysis patients in the Health Center are not allowed to buy or possess any food from the commissary. This is because their health is more precarious and it is necessary that the medical staff their [*sic*] strictly control the dialysis patients' diets.

9.      Mr. Wolfe is in the Health Center, so he is not allowed commissary food.

10.     The commissary is the free-world equivalent of a convenient store. Restrictions on this food do not affect the inmates' regular meals. Of course, there are dietary restrictions on the regular meals.

11.     As a physician, I do not determine the diets for patients with various diseases, such as renal disease. If there is not a dietician at the facility, then the medical staff, if necessary, works with dieticians employed by the Tennessee Department of Correction to determine the proper diet.

12.     The restrictions I have placed on dialysis patients' access to commissary food go back to at least 2007.

13.     In 2007, dialysis patients wanted to gain access to commissary food by signing a form acknowledging they were going against medical advice. In my opinion as a physician in a prison setting, this could not be allowed.

14.     Finally, in September 2008, I prohibited dialysis patients from having even limited access to commissary food. Again, this is to protect the inmates' health.

Docket 57-2, p. 1-2.

In his opposition Affidavit, Plaintiff offers the following information. He states that

"Defendants" ordered a "therapeutic diet" as part of his treatment. Dr. Alexander further restricted his diet by prohibiting the purchase of food items from the commissary as part of Plaintiff's medical treatment. He states that there are TDOC Policies and Procedures that provide for the refusal of medical services, specifically the refusal of a therapeutic or medical diet. He has signed a "TDOC Form CR 1984," refusing medical services "many times" pertaining to a therapeutic diet. Defendants knew of this Policy and were aware of it when they caused his property (*i.e.*, his commissary food) to be confiscated in 2008. He also states, "Complete prohibition of purchasing food items from the commissary did not occur until after the Plaintiff filed grievances in this matter." Docket No. 62, p. 2. Plaintiff believes that Dr. Alexander's commissary prohibition was a punishment and retaliation for his resisting unwanted medical treatment and for filing grievances. He also complains that unwanted medical treatment has been forced upon him "at least three times daily, against his explicit wishes, up to the filing of this Complaint." *Id.*, p. 3.

Defendant first relies upon the one year statute of limitations set out in T.C.A. § 28-3-104(a)(3). Defendant is correct that some of Plaintiff's claims are barred by the statute of limitations. The acts that occurred in 2007 and 2008 are time-barred. These are not the only allegations, however, that Plaintiff makes. As discussed above, Plaintiff complains that, as of the filing of the Complaint, he was still being the denied the right to refuse medical treatment. Any claims Plaintiff has in this regard for instances that occurred within one year of the filing of the Complaint, are not barred by the statute of limitations.

Defendant's other grounds concerning the Eighth Amendment and the Equal Protection Clause may well be correct. Defendant, however, misses the key allegation in Plaintiff's

Complaint, namely that he is being denied the right to refuse medical treatment. As the Sixth

Circuit has stated, individuals in state custody "enjoy protectable liberty interests . . . to refuse

medical treatment . . . ." *Noble v. Schmitt*, 87 F.3d 157, 161 (6th Cir. 1996) (citing cases). In

*Noble*, the Sixth Circuit also looked to the fact that state law established reasonable expectations

of liberty from such measures, which merit due process protection. *Id.* The Court noted that

statutory law in Kentucky declares that hospitalized patients enjoy the right to refuse medical

treatment. *Id.*

The same is true in Tennessee. T.C.A. § 68-11-1803(a), which is part of the "Tennessee

Health Care Decisions Act," provides, "An adult or emancipated minor may give an individual

instruction." The term "individual instruction" is defined to mean "an individual's direction

concerning a health care decision for the individual . . . ." T.C.A. § 68-11-1802(a)(10). That Act

also provides, "An individual is presumed to have capacity to make a health care decision . . . ."

T.C.A. § 68-11-1812(b).

Additionally, Plaintiff is correct that TDOC policy specifically allows him to refuse

"therapeutic diets."[1] TDOC Administrative Policies and Procedures #113.35.VI.D.4 provides in

relevant part:

> In accordance with Policy #113.51, inmates may refuse medical
> diets by signing a Refusal of Medical Services, CR-1984 . . .
>
> Inmates with an order for a therapeutic diet tray may refuse the tray
> in favor of a regular diet tray.

TDOC Policy #113.51 states its purpose as "To establish guidelines for an inmate's

---

[1] The Policies and Procedures quoted below were found on the website of the Tennessee
Department of Correction.

informed consent or refusal of health care services." That policy further provides procedures to

be followed "[w]hen an inmate chooses to refuse an examination, treatment, or procedure . . . ."

TDOC Policy #113.51VI.B. Dr. Alexander does not discuss or acknowledge the existence of

these Policies.

Plaintiff has also attached a number of documents to his Complaint. Included is a July

27, 2007, Memo to "All Staff" from "B.J. Rhodes – DDHTS," re "Commissary Against

Medical-Advice," which reads as follows:

> After discussion with Dr. Alexander on 7/26/07, the issue of
> whether or not inmates are allowed to refuse special Commissary
> orders with an A.M.A.[presumably "Against Medical Advice"],
> then receive a regular order, is under these guidelines:

> > As per Dr. Alexander, "If an inmate wishes to
> > A.M.A. their special Commissary orders there will
> > be NO Commissary AT ALL. Commissary is a
> > privilege."

Docket No. 1, p. 11.

Also attached to Plaintiff's Complaint is a Memorandum from Dr. Alexander dated

September 3, 2008, the subject of which is "Food Commissary for Dialysis Patients." The

Memorandum is to "Security Unit 15B, Nursing Unit 15B, Unit Coordinator 15B," and states as

follows:

> Effective immediately dialysis patients are no longer allowed to
> have and/or purchase food commissary.

Docket No. 1, p. 23.

The first of these Memoranda can be read to provide that, if an inmate wishes to exercise

his right to go against medical advice and "receive a regular order," he will be deprived of all of

7

his commissary privileges. There are genuine issues as to why Dr. Alexander initially restricted, then eliminated entirely, commissary privileges for dialysis patients. A reasonable jury could certainly conclude that these actions amount to retaliation. While Defendant is correct that inmates may not have a constitutional right to purchase food from the commissary, the Sixth Circuit has stated:

> It is well established that government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999) (citing cases).

Plaintiff has also raised a sufficient argument that Defendant Alexander has denied Plaintiff the right to refuse medical treatment (*i.e.*, to "sign-off" the modified diet as a dialysis patient). Such a right is recognized by state law and constitutes a protectable liberty interest under the Fourteenth Amendment. While Dr. Alexander's Affidavit states that he does not determine diets for patients with various diseases, such as renal disease, he further states that if there is not a dietician at the facility, the "medical staff if necessary, works with dieticians employed by the Tennessee Department of Correction to determine the proper diet." Defendant, however, does not explain whether there is a dietician at the facility. Presumably, he is on the "medical staff" since he is the "medical director" at the facility. Nor does he specifically address Plaintiff's allegations that he has been denied the right to refuse a therapeutic diet in favor of a regular meal tray, as Plaintiff is allowed to do under TDOC Policies.

For the foregoing reasons, the Court concludes that there are disputed issues as to material facts, and that Defendant Alexander is not entitled to a judgment as a matter of law.

Thus, the instant Motion for Summary Judgment (Docket No. 57) should be DENIED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied,* 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


E. Clifton Knowles
United States Magistrate Judge