UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

Tony Wolfe,                          )
     Plaintiff,                     )
                                     )
v.                                   )          Case No. 3:11-cv-0751
                                     )          Judge Sharp
Paul Alexander, et al.,              )
     Defendants.                    )

**MEMORANDUM**

Before the Court are five motions, listed in chronological order of filing: (1) Plaintiff's

Motion for Summary Judgment Against Defendant Alexander as to Liability for Violation of

Plaintiff's Fourteenth Amendment Right to Refuse a Medical Diet (ECF 117); (2) Plaintiff's

Second Motion for Preliminary Injunction (ECF 127); (3) Defendant Burns' Motion for Partial

Summary Judgment (ECF 156); (4) Defendants Campbell, McConnell, Steele, and Woods'

Motion for Summary Judgment (ECF 159); and (5) Plaintiff's Motion for Partial Summary

Judgment for Violation of His Right Against Forced Medical Treatment Against Defendants

Alexander, Burns, Woods, and Campbell (ECF 162).

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

At all times relevant to this case, Plaintiff was housed as an inmate at the DeBerry

Special Needs Facility ("DeBerry"), a TDOC facility equipped to provide for prisoners with

medical needs. Plaintiff suffers from end-stage renal disease and takes dialysis treatments

because of his kidney failure. Defendant Paul Alexander, a medical doctor, was the Medical

Director at DeBerry from prior to Plaintiff's arrival at DeBerry in 2007 until March, 2012.

Defendant Roberta Burns, also a medical doctor, replaced Defendant Alexander as Medical

Director from March 2012 until July 2013. In July 2013, Dr. Alexander returned to the position of Medical Director at DeBerry.

Many of the facts in this matter are not in dispute. When Plaintiff arrived at DeBerry in 2007, Defendant Alexander had already established a policy (the "Diet Tray Policy") requiring that dialysis-patient inmates receive special diet trays at mealtimes with foods designed to meet their medical needs. Under this policy, inmates were not allowed to sign an Against Medical Advice ("A.M.A.") form to refuse the diet tray.

In 2007, Defendant Alexander also implemented a policy pertaining to Plaintiff and other dialysis-patient inmates at DeBerry which prohibited them from purchasing or possessing anything from the commissary that was not on a pre-approved list of items (the "Restricted Commissary Policy"). Defendant Alexander avers that the commissary restrictions were for the purpose of meeting the medical needs of the dialysis patients. Plaintiff requested that he be allowed to sign an A.M.A. form and thus be allowed to purchase commissary items that were not on this pre-approved list. Prison staff did not allow him to do so.

On July 27, 2007, Defendant Alexander caused a staff member to issue a memo (the "Commissary Warning Memo") to all DeBerry staff members stating: "As per Dr. Alexander, 'If an inmate wishes to A.M.A. their special Commissary order, there will be NO Commissary AT ALL. Commissary is a privilege." (ECF 1, at 11.)

In response to the Commissary Warning Memo, Plaintiff filed additional grievances (ECF 1, at 12--22) and continued attempting to order non-approved items from the commissary by signing A.M.A. forms. On September 3, 2008, Defendant Alexander instituted a new policy (the "No Commissary Policy") stating: "Effective immediately dialysis patients are no longer allowed to have and/or purchase food commissary." (ECF 1, at 23.)

2

The parties disagree about Defendant Alexander's motivation for instituting the No Commissary Policy. Plaintiff alleges it was in retaliation against him and other inmates for grieving the restrictions on their access to commissary items. Dr. Alexander asserts that his actions were not retaliatory but instead were motivated by concern for the inmates' health. He asserts that the inmates were informally trading commissary food and thus consuming food not recommended for their medical conditions.

Plaintiff also requested to see a dietician to get advice about his diet. He filed grievances after his requests were denied. (ECF 1, at 24--32.) In September 2008, a DeBerry staff member provided a written response to one of his grievances, stating: "We currently do not have a dietician on staff and I cannot get one to come work here. Your dietary issues are being addressed by a doctor who is above the dietician." (Id. at 24--25.) Staff responded similarly to a grievance about the lack of access to a dietician in October 2008. (Id. at 29--30.)

On November 24, 2009, Plaintiff filed a grievance alleging that from October 2008 to the time of his grievance, he was facing ongoing harassment, retaliation, and "[d]ifferent standards/opportunities/programs" (Id. at 33--35.)

In December 2009, Plaintiff filed a complaint with the Office for Civil Rights in the U.S. Department of Justice, which the agency immediately administratively closed for lack of jurisdiction. (Id. at 36.)

On January 10 and June 21, 2011, Plaintiff filed additional grievances complaining about the Diet Tray and No Commissary policies. He also alleged that Defendant Alexander was continuing to "abuse his authority" and discriminating against dialysis patients. (Id. at 39--40, 43--44.) DeBerry staff returned the June 2011 grievance to him on a pre-printed form for

grievances that are deemed "inappropriate to the grievance procedure" because he had a "diagnosis by medical professionals." (Id. at 41.)

On August 5, 2011, Plaintiff Tony Wolfe filed a *pro se* and *in forma pauperis* Complaint against numerous defendants wherein he sought relief under 42 U.S.C. § 1983 for alleged violations of his constitutional rights during his confinement at the Tennessee Department of Correction ("TDOC"). (ECF 1.) On September 7, 2011, Plaintiff filed a *pro se* first amended Complaint. (ECF 11.)

On December 14, 2011, Defendants Woods, Campbell, McConnell, and Steele filed a motion to dismiss (ECF 40), in response to which Plaintiff filed a *pro se* verified Opposition. (ECF 55.)

On July 5, 2012, the Magistrate Judge issued a Report and Recommendation ("R&R"). Because the Magistrate Judge considered factual allegations in Plaintiff's verified Opposition, he treated the motion as one for summary judgment. The Magistrate Judge considered both the original Complaint (ECF 1) and the First Amended Complaint (ECF 11), quoting from both complaints to assist him in understanding Plaintiff's claims.

On February 8, 2013, this Court considered Defendants' objections to the R&R (ECF 69), accepted and approved the R&R, and overruled the objections thereto. (ECF 102.) In approving the R&R, the Court granted the motion to dismiss as to any claims involving matters that occurred more than one year prior to the filing of the original Complaint on August 11, 2011. But to the extent that Plaintiff alleged that the violation of his right to refuse medical treatment had been ongoing and continuous, the Court held that any violation of § 1983 alleged to have occurred within the year preceding the filing of the Complaint was not barred by the statute of limitations. The Court also held that although a plaintiff pursuing a § 1983 claim must allege and

4

prove that a defendant was personally involved in the alleged unconstitutional activity set out in the complaint, "these Defendants apparently adhered to Dr. Alexander's restrictions and, in so doing, appear to have violated written Policies of TDOC," and thus were not entitled to judgment as a matter of law. (ECF 66, at 4.)

On March 28, 2012, Defendant Alexander filed a motion for summary judgment (ECF 57), to which Plaintiff filed a *pro se* response in opposition. (ECF 60.) The Magistrate Judge issued an R&R, concluding that there were disputed issues as to material fact such that Defendant Alexander was not entitled to judgment as a matter of law. (ECF 65.)

On July 19, 2012, this Court overruled Defendant Alexander's objection to the R&R (ECF 70), and accepted and approved it. (ECF 101.) In so doing, the Court ruled that claims based on acts alleged to have occurred in 2007 and 2008 were barred by the one-year statute of limitations set out in Tenn. Code Ann. § 28-3-104(a)(3). The Court also held that, to the extent Plaintiff complained that he continued to be denied the right to refuse medical treatment, any claims for instances that occurred within one year of the filing of the Complaint were not barred by the statute of limitations. The Court held that "the right to refuse medical treatment . . . is recognized by state law and constitutes a protectable liberty interest under the Fourteenth Amendment." (ECF 65, at 8.) The Court found that there were genuine disputes as to material facts related to Defendant Alexander's role in deciding upon and implementing the dietary restrictions and his motivation for restricting and later eliminating commissary privileges, and that a "reasonable jury could certainly conclude that these actions amount to retaliation." (*Id.*)

On July 27, 2012, Plaintiff filed a Motion for Joinder (ECF 72), which the Magistrate Judge interpreted as a motion to amend the complaint to add an additional defendant. The Magistrate Judge granted this motion on December 6, 2012 (ECF 89), after he issued his R&Rs

5

on the two motions for summary judgment. On December 31, 2012, Plaintiff filed his Second Amended Complaint. (ECF 95.) On June 13, 2013, Plaintiff filed a Third (and final) Amended Complaint with assistance of counsel, who had entered his appearance the previous day. (ECF 119.)

Plaintiff's Third Amended Complaint raises some additional legal claims that were not part of his previous complaints and therefore were not addressed in the earlier orders resolving Defendants' motions for summary judgment. This most recent complaint raises claims against Defendants Alexander and Burns for their actions as medical directors at DeBerry. He also brings claims against Defendants Julia Campbell and Clifford Woods, who were correctional officers at DeBerry and enforced the medical director's policies through disciplinary actions against Plaintiff. There is no dispute that following the issuance of the No Commissary Policy, Defendants Campbell and Woods disciplined Plaintiff for possession of disallowed commissary items. He was placed in segregation and faced other restrictions. Plaintiff also brings claims against Defendant Jewel Steele,[1] who was the Warden at DeBerry, and Defendant Joel McConnell, who was the Medical Director.

## ANALYSIS

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) requires the Court to grant a motion for summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to

---

[1] Plaintiff's Third Amended Complaint also raises claims against Defendants Jennie Jobe and Ronald Colson who were the Warden and Deputy Warden, respectively, at DeBerry from August 5, 2010 to September 1, 2011.

6

judgment as a matter of law." If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322--23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the [plaintiff]." *Moldowan*, 578 F.3d at 374.

"[T]he judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient," and the plaintiff's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the plaintiff. *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II. Plaintiff's Motions for Summary Judgment Against Defendant Alexander as to Liability for Violation of Plaintiff's Fourteenth Amendment Right to Refuse a Medical Diet.

The Court interprets Plaintiff's Third Amended Complaint as raising the following four § 1983 claims against Dr. Alexander: (1) Fourteenth Amendment Due Process violation of Plaintiff's right to refuse medical services by refusing the special medical diet and accessing the regular meal trays and commissary food generally available to other inmates at DeBerry; (2) First Amendment retaliation against Plaintiff for his attempts to exercise his right to refuse a medical diet by continuing the No Commissary and Diet Tray policies, continuing to fail to provide Plaintiff with medical education and counseling as to his dietary needs, and disciplining

7

him for having unapproved commissary items; (3) Fourteenth Amendment Due Process violation for subjecting Plaintiff to punitive segregation and other deprivations because he exercised his right to refuse medical restrictions and possess commissary items; (4) Eighth and Fourteenth Amendment violations of Plaintiff's right to be free of cruel and unusual punishment through deliberate indifference to his medical needs based on Defendant's failure to assist Plaintiff with developing a diet that would appropriately meet his medical needs. (ECF 119.) Plaintiff alleges he has suffered physical and emotional damage as a result of Dr. Alexander's actions, including weight loss and "other ill effects" from consuming the special diet, from the "lack of individualized medical guidance," and from the disciplinary actions taken against him because he was in possession of disallowed commissary items. (ECF 119, at ¶11.)

Although he raises four claims, the Court interprets both of Plaintiff's motions for summary judgment against Defendant Alexander (ECF 117, 162) as seeking judgment only on the first claim enumerated above. Although Defendant Alexander's response addresses the retaliation claim, listed as claim number two above, the Court does not interpret Plaintiff's motion to be seeking judgment on that claim. Further, the Court interprets this first claim, based on the Third Amended Complaint and the arguments raised in his various pleadings, as only raising a claim that Plaintiff's substantive due process rights were violated, not his procedural due process rights.

### A. Fourteenth Amendment Substantive Due Process Claim

As to Plaintiff's substantive due process claim, the Magistrate Judge cited in his R&R. the Tennessee Health Care Decisions Act, which provides that "[a]n adult or emancipated minor may give an individual instruction," which is defined as "an individual's direction concerning a health care decision for the individual." Tenn. Code Ann. §§ 68-11-1803(a), 68-11-1802(a)(10).

8

The state statute also provides, "An individual is presumed to have capacity to make a health care decision." Tenn. Code Ann. § 68-11-1812(b). This Act is in the section of the Tennessee Code that regulates "health facilities and resources." Neither party addresses the applicability of these provisions to the prison context.

However, as the Magistrate also noted, TDOC policy itself *specifically* allows inmates to refuse "therapeutic" diets: "In accordance with Policy #113.51, inmates may refuse medical diets by signing a Refusal of Medical Services, CR-1983. . . Inmates with an order for a therapeutic diet tray may refuse the tray in favor of a regular diet tray." TDOC Policy #113.35.VI.D.4. TDOC policy #113.51 states that its purpose is "[t]o establish guidelines for an inmate's informed consent or refusal of health care services," and outlines procedures to be followed "[w]hen an inmate chooses to refuse an examination, treatment, or procedure." TDOC Policy #113.51.VI.B. Further, under the heading "Forced Treatment," TDOC policy provides, "Treatment beyond that required for maintaining the life of the inmate shall not be forced by health care staff, absent a court order." TDOC Policy 113.51.VI.D.

As a preliminary matter, the parties dispute the proper analysis for Plaintiff's substantive due process claim. Plaintiff's motion quotes *Black v. Parke*, 4 F.3d 442 (6th Cir. 1993), for the proposition that a state regulation confers a liberty interest protected by the Due Process Clause "when it constitutes more than a simple procedural guideline, and 'uses language of an unmistakably mandatory character.'" *Id.* at 446 (quoting *Hewitt v. Helms*, 459 U.S. 460, 469 (1983)).

Defendant Alexander correctly points out that the Supreme Court explicitly abandoned this "methodology" in *Sandin v. Conner*, 515 U.S. 472, 484 n.5 (1995). No longer does every

state statute or prison regulation create a liberty interest protected by the Due Process Clause. As

the *Sandin* Court held,

> States may under certain circumstances create liberty interests which are protected
> by the Due Process Clause. But these interests will be generally limited to
> freedom from restraint which, while not exceeding the sentence in such an
> unexpected manner as to give rise to protection by the Due Process Clause of its
> own force . . . nonetheless imposes atypical and significant hardship on the
> inmate in relation to the ordinary incidents of prison life.

*Id.* at 483--84.

Thus, the first question the Court must resolve is whether the Tennessee Health Care

Decisions Act or the TDOC Policy guidelines create a liberty interest that is protected by the Due

Process Clause. The year after *Sandin* was decided, the Sixth Circuit considered a § 1983 claim

brought by an individual diagnosed with paranoid schizophrenia who was involuntarily

committed to a mental hospital in Kentucky. *Noble v. Schmitt*, 87 F.3d 157 (6th Cir. 1996).

Noble alleged that staff at the hospital violated his free speech and substantive and procedural

due process rights under the First and Fourteenth Amendments when they physically restrained

him and forcibly administered psychotropic medications. The Sixth Circuit found that Kentucky

law established a reasonable expectation of liberty in refusing medical treatment. *Id.* at 161. The

court elaborated: "Certain freedoms . . . survive incarceration. The Supreme Court has held that

individuals in state custody enjoy protectable liberty interests to be free from bodily restraint,

and to refuse medical treatment such as the administration of antipsychotic drugs." *Id.* (citing

*Cruzan v. Director, Mo. Dep't. of Health,* 497 U.S. 261, 278 (1990); *Youngberg v. Romeo,* 457

U.S. 307, 316 (1982); *Washington v. Harper,* 494 U.S. 210, 221 (1990)). The *Noble* court cited

Kentucky statutory law that provided hospitalized patients the right to refuse medical treatment

as well as the right to be free from unreasonable seclusion and restraint, and concluded that "the

liberty interests which Noble invokes are firmly grounded in both the federal Constitution and state law." *Id*. at 161--62.

However, although the right to refuse medical treatment is clearly protected by the Due Process Clause, that conclusion does not resolve the question of whether restricting a prison inmate's diet to foods that are deemed appropriate for his medical condition implicates substantive due process rights. As Defendants Campbell and Woods point out in opposing Plaintiff's Motion for Partial Summary Judgment against them (addressed below), the Fourteenth Amendment substantive due process right to refuse medical treatment arises out of the common law tort of battery:

> At common law, even the touching of one person by another without consent and without legal justification was a battery. . . . This notion of bodily integrity has been embodied in the requirement that informed consent is generally required for medical treatment. . . . The logical corollary of the doctrine of informed consent is that the patient generally possesses the right not to consent, that is, to refuse treatment.

*Cruzan*, 497 U.S. at 269. Justice O'Connor elaborated on this principle in her concurring opinion:

> As the Court notes, the liberty interest in refusing medical treatment flows from decisions involving the State's invasions into the body. Because our notions of liberty are inextricably entwined with our idea of physical freedom and self-determination, the Court has often deemed state incursions into the body repugnant to the interests protected by the Due Process Clause. . . . The State's imposition of medical treatment on an unwilling competent adult *necessarily involves some form of restraint and intrusion.*

*Id.* at 287--88 (citations omitted) (emphasis added).

In substantive due process cases, the Supreme Court requires a "careful description of the asserted fundamental liberty interest." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (internal quotation marks and citations omitted). The fundamental liberty interest asserted by

11

Plaintiff here is that a prisoner has a right to be free of dietary restrictions imposed for purposes of managing his medical condition. However, he has not cited, nor has the Court identified, a single case recognizing such a liberty interest. All of the cases cited by the Plaintiff that address substantive due process rights against forced medical treatment involved actions that constituted an actual physical touching of the body. *See, e.g.*, *Cruzan*, 497 U.S. at 269 (feeding/hydration tube inserted in individual in vegetative state); *Harper*, 494 U.S. at 210 (forced administration of antipsychotic drugs to mentally-ill inmate)*; Noble*, 87 F.3d at 161-62 (forced medication of involuntarily committed mental patient) *Youngberg*, 457 U.S. at 307 (bodily restraint of intellectually disabled individual); *Davis v. Agosto*, 89 F. App'x. 523 (6th Cir. 2004) (suturing bleeding cut on inmate's head); *McCormick v. Stalder*, 105 F.3d 1059 (5th Cir. 1997) (INH treatment on inmate with tuberculosis); *Russel v. Richards* 384 F.3d 444 (7th Cir. 2004) (delousing shampoo on new inmates); *State v. Vogel*, 537 N.W.2d 358 (N.D. 1995) (forced food, insulin, and monitoring of blood sugar of diabetic inmate); *Brown v. Ionescu*, No. 2-Civ1218, 2004 WL 2101962 (S.D.N.Y.) (implanting stent in inmate); *Comm'r of Corr. v. Myers*, 399 N.E.2d 452 (Mass. 1979) (forced hemodialysis treatment and medications). In contrast to these cases, Plaintiff is not being forced to endure any "invasions into the body." *Cruzan*, 497 U.S. at 287.

In addition, there are many cases that hold that a prison's provision of food that is deliberately rendered unappetizing for the purpose of punishing inmates does not violate substantive due process. *See, e.g.*, *Turnboe v. Gundy*, 25 F. App'x. 292 (6th Cir. 2001) (being fed food loaf does not implicate a substantive due process liberty interest as it does not constitute an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life). The complaint that prison food is unappetizing is somewhat different than Plaintiff's

12

complaint that the imposed food restrictions constitute forced medical treatment. But the Court does find instructive the many cases in which courts have found that an inmate's displeasure with prison food does not implicate constitutional protections, assuming that the food is nutritionally adequate. See, e.g., *Tucker v. Rose*, 955 F. Supp. 810 (N.D. Ohio 1997) (occasional presence of rodents near prison food was insufficient basis to impose liability for violation of Eighth Amendment rights when prison took steps to exterminate pests); *Cosby v. Purkett,* 782 F. Supp. 1324 (E.D. Mo. 1992) (providing inmates with only cold meals not a violation of prisoners' rights if the food is adequate nutritionally and prepared in sanitary manner); *Kirsch v. Endicott*, 549 N.W.2d 761, 765-66 (Wis. Ct. App. 1996) (holding that even if providing prisoners in disciplinary segregation with cold bag lunches rather than hot prison meals received by general population violated Wisconsin state administrative regulations, meals were nutritionally adequate and "[a] violation of an administrative rule does not, in and of itself, implicate the constitution"); *Burgin v. Nix*, 899 F.2d 733, 734 (8th Cir. 1990) (finding no constitutional violation based on prison's serving nutritionally adequate sack lunches to those in disciplinary segregation and stating "control of the diet is within the[] discretion [of prison officials], assuming it is adequate").

Many cases in which inmates challenge their diet are in the context of claims that the prison diet is not appropriate for the inmate's medical condition and, as such, constitutes deliberate indifference to medical needs in violation of the Eighth Amendment.[2] In this case,

---

[2] For example, in *Wilson v. Woodford*, a district court addressed a prisoner's complaint that he should have received an individualized diet as a diabetic, instead of receiving a "Heart Healthy" diet, "which is restricted in sodium and fats," which the prison served to the entire inmate population, with education for diabetic inmates about making proper food choices from the diet served to the rest of the inmates. *Wilson v. Woodford*, 1:05-CV-560, 2009 WL 839921, at *15 (E.D. Cal. March 30, 2009). The court held that educating diabetic inmates about how to tailor the general "Heart Healthy" diet to their particular needs

13

although Plaintiff disagrees with the dietary restrictions imposed on him and was displeased that he was not provided individual meetings with a dietician to discuss and craft his own diet, there is no evidence in the record, other than his unsubstantiated opinion, that the food he was served was not appropriate to his medical needs or was in any way nutritionally inadequate.

In addition to this line of cases holding that prison officials have discretion to control inmates' diets, assuming the diets are nutritionally adequate, there are also cases that hold that loss of commissary privileges does not implicate due process concerns. *See, e.g.*, *Cato v. Watson*, 212 F. App'x. 258, 259 (5th Cir. 2006); *Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996) ("[W]e know of no constitutional right of access to a prison . . . snack shop."); *Newell v. Ruth*, No. 1:11-cv-86, 2014 WL 4411045, at *9 (E.D. Tenn. Sept. 8, 2014) ("[C]ommissary access is a privilege, not a right.").  Again, the general proposition that there is no constitutional right to commissary access does not mean that there are no circumstances under which denial of access to commissary could implicate a constitutional right. As the Magistrate Judge in this matter held, denial of access to commissary in retaliation for an inmates' exercising a constitutionally protected right could, for example, be unconstitutional. But as a general matter, there is no constitutional right to commissary access. Further, just as the Court has not found a case in which a court has held that imposition of a meal tray designed to meet the medical needs of an inmate over his objection is a violation of substantive due process rights, neither has the Court found, nor has Plaintiff provided, a single case in which a prison's restricting or denying access to commissary items in order to control an inmate's diet for medical purposes was found to

---

did not amount to deliberate indifference under the Eighth Amendment. Again, this is a different context than the case at bar, but to be clear, the *entire* prison was served a restricted diet the prison deemed most healthy, in keeping with the case law that, assuming  the diet is nutritionally adequate, it does not implicate constitutional rights.

violate substantive due process rights. Thus, after further briefing and consideration, the Court concludes that the restrictions on Plaintiff's diet represented by the Diet Tray Policy, the Commissary Restriction Policy, and the No Commissary Policy do not implicate liberty interests that are protected by the Fourteenth Amendment Due Process Clause.

Furthermore, even if the restrictions on Plaintiff's diet do, in fact, violate his substantive due process rights to refuse medical treatment, "that right is not absolute and is particularly susceptible to regulation in the prison setting." *Davis*, 89 F. App'x. at 528. "[T]he proper standard for determining the validity of a prison regulation claimed to infringe on an inmate's constitutional rights is to ask whether the regulation is reasonably related to legitimate penological interests. . . . This is true even when the constitutional right claimed to have been infringed is fundamental, and the State under other circumstances would have been required to satisfy a more rigorous standard of review." *Harper*, 494 U.S. at 223 (internal quotation marks and citations omitted). The Supreme Court has explicitly recognized the "legitimacy, and the necessity, of considering the State's interests in prison safety and security." *Id.* at 223.

The Supreme Court has set forth several factors that are relevant to determining the reasonableness of the regulation at issue:

> First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. Thus, a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational. Moreover, the governmental objective must be a legitimate and neutral one. . . . A second factor relevant in determining the reasonableness of a prison restriction . . . is whether there are alternative means of exercising the right that remain open to prison inmates. . . . A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. . . . Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation.

15

*Turner v. Safley*, 482 U.S. 78, 89--90 (1987).

Applying the first of the three *Turner* factors relevant to forced medical treatment, *see Harper*, 494 U.S. at 224—25, the court finds that Defendants have put forth legitimate interests that have a valid, rational connection to the dietary restrictions at issue.[3] First, Defendants argue that the state has a legitimate interest in promoting the health of inmates. *See, e.g.*, *McCormick*, 105 F.3d at 1062 ("[E]ven if [the inmate] has a substantive due process right not to be forcibly medicated against tuberculosis—for his own benefit as well as that of the prison—the prison's policy was nevertheless constitutional.").

This is a legitimate interest standing alone, but it also implicates a second interest raised by the government, which is avoiding the cost of future medical expenses incurred because of failure to appropriately treat medical conditions. This consideration also fits into the third *Turner* factor, the impact that accommodation of the asserted constitutional right will have on the allocation of prison resources generally. As the Sixth Circuit explained in *Davis v. Agosto*, although suturing a bleeding cut on an inmate's head against his wishes implicated his substantive due process right against forced medical treatment, the procedure was reasonably related to legitimate penological concerns of protecting his health and also protecting against future increased medical expenses and, as a result, did not violate his constitutional rights:

---

[3] Defendant Alexander urges the Court to consider Plaintiff's purposes for objecting to the food restrictions, citing cases in which plaintiffs refused medical treatment for the purpose of manipulating the prison. *See, e.g., State ex rel. Schuetzle v. Vogel*, 537 N.W. 2d 358, 364 (N.D. 1995); *Myers*, 399 N.E.2d at 458. In each of these cases, the inmates explicitly refused medical treatment to attempt to manipulate prison authorities to either change their placement within the prison system or to change their security level. The Court does not find any evidence that Plaintiff's efforts to resist dietary restrictions are for purposes of manipulating the prison system.

16

It was well within the authority of the medical officials at the prison to determine that closing the wound was necessary to the health and safety of Davis as well as to those around him. Had they opted not to provide the treatment, the officials could have subjected themselves to a deliberate-indifference claim and would of course have remained responsible for providing any further medical treatment prompted by the failure to close the wound.

*Davis,* 89 F. App'x. at 528; *see also Schuetzle,* 537 N.W.2d at 364 (future medical cost of allowing diabetic prisoner to refuse treatment considered as one factor justifying forced injections of insulin). In *Russell v. Richards,* 384 F.3d 444 (7th Cir. 2004), the Seventh Circuit found the involuntary application of delousing shampoo to new inmates permissible based on concerns about inmates' health as well as future costs to the prison of failing to treat for lice:

The jail has an obligation to ensure the safety and medical well-being of its inmates and its personnel, and toward that end the jail has a legitimate interest in preventing an inmate population and staff from being exposed to lice, not to mention a legitimate fiscal interest in avoiding the costs associated with eradicating a lice infestation.

*Id.* at 448.

In analyzing further the third *Turner* factor, "the impact accommodation of the asserted constitutional right will have on . . . the allocation of prison resources generally," the Court considers Plaintiff's argument that the dietary restrictions were not necessary. Defendant Burns ended the Diet Tray Policy on August 20, 2012, allowing Plaintiff and other dialysis patient inmates to begin opting out of the diet trays and receiving regular trays. Plaintiff argues that this change has not caused "widespread health problems":

Indeed, prior to the change in policy Defendant Burns correctly perceived that the nephrologist would be able to compensate for the negative effects of the regular meal tray in dialysis. In part, this was because the main difference between the regular tray and the renal tray, as it relates to dialysis patients, is only in their respective phosphorous content. As it pertains to Plaintiff Wolfe in particular, his

17

level of potassium and sodium have not exceeded safety thresholds since the change.

(ECF 163, at 13--14.)

The excerpt from Plaintiff's brief demonstrates the extent to which he invites this court to second-guess and micromanage the prison's decisions. The Due Process Clause simply does not provide inmates with a liberty interest in refusing a diet designed to address medical needs such that the prison's Medical Director would, as a result, be required to work with a nephrologist to compensate for the inmate's refusal to follow a medically appropriate diet by adjusting how the nephrologist conducts the dialysis treatment. The Supreme Court has repeatedly held that courts owe "substantial deference to the professional judgment of prison administrators." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *see also Beard v. Banks*, 548 U.S. 521, 528 (2006). Plaintiff's demands would require the prison to expend its resources in ways it clearly deems unnecessary or inappropriate. This Court declines to micromanage the prison in areas typically within prison authorities' expertise and authority in a way that is inconsistent with Supreme Court precedent.

In conclusion, the Court finds that the dietary restrictions imposed on Plaintiff for medical reasons do not implicate a federal substantive due process right and, even if they did, that right is not absolute, particularly in the prison context. The Court concludes after analyzing the reasons offered by the State that the restrictions are reasonable, and thus, Plaintiff's constitutional rights were not violated. Accordingly, Wolfe's motions for summary judgment (ECF 117, 162) on the Fourteenth Amendment Due Process claim will be denied.

18

## B.     Fourteenth Amendment Equal Protection Claim

In Plaintiff's second motion for summary judgment, he argues that Defendant Alexander violated his rights under the Equal Protection Clause (ECF 163, at 5). Plaintiff raised this claim in his *pro se* response to Defendant Alexander's motion for summary judgment (ECF 60), though it was not disposed of in the Court's order on that motion. However, Plaintiff did not raise this argument in his first motion for summary judgment against Defendant Alexander, a motion brought with the assistance of counsel. (ECF 117.) Defendant Alexander objects to the Court's considering this claim because it was not in Plaintiff's Third Amended Complaint. Plaintiff argues that under "notice pleading" standards, his complaint only needs to show the facts upon which the claim is based; it does not have to include every possible legal theory of liability. (ECF 179-1, at 1 (citing *Kennedy v. Nat'l Juvenile Detention Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999) ("[T]he complaint does not necessarily have to point to the proper statute in order to state a cause of action to which [a plaintiff] is entitled to relief.").)

The Court disagrees. In *Tucker v. Union of Needletrades, Industrial., & Textile Employees.*, 407 F.3d 784 (6th Cir. 2005), the Sixth Circuit rejected plaintiff's argument that she was entitled to liberal construction of her complaint to include new a theory raised for the first time at the summary judgment stage, because "[o]nce a case has progressed to the summary judgment stage . . . the liberal pleading standards under . . . [the Federal Rules] are inapplicable." *Id.* at 787–88 (internal quotation marks omitted). Plaintiff has not sought to amend his complaint to include this claim, and it is not properly before the Court.

Further, even if the Court considered this claim on the merits, it cannot survive summary judgment. The Equal Protection Clause of the Fourteenth Amendment precludes the states from making "distinctions which either burden a fundamental right, target a suspect class, or

19

intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005) (citing *Vacco v. Quill*, 521 U.S. 798, 799 (1997); *Village of Willowbrook v. Oletech*, 528 U.S. 62, 564 (2000) (per curium)). The Court has already held that Plaintiff has no constitutional right to be free of health-based dietary restrictions in prison, so there is no right being burdened, much less a fundamental right. Because he has not amended his complaint to raise an Equal Protection claim, it is unclear to what, if any, suspect class he might belong. *See Simpson v. Ameji*, 57 F. App'x. 238, 239 (6th Cir. 2003) (upholding dismissal of Equal Protection claim brought by prisoner with rheumatoid arthritis because he did not allege he was a member of a protected class). Plaintiff offers no cases to suggest that his being a dialysis patient places him in a suspect class. Additionally, the prison's treating him differently because he is a dialysis patient has a rational basis, as is clear from the Court's analysis above. Finally, even if his Equal Protection rights were violated, the *Turner v. Safley* analysis applies to all inmate constitutional claims, including equal-protection claims. *See Harper*, 494 U.S. at 223--24 ("We made quite clear that the standard of review we adopted in *Turner* applies to all circumstances in which the needs of prison administration implicate constitutional rights."). The prison's imposition of restrictions on the types of foods that were available to Plaintiff from the commissary and on his meal trays did not constitute a violation of Plaintiff's rights under the Equal Protection Clause, as the Court's earlier analysis of the *Turner v. Safley* factors demonstrates.

### C.    Other Claims Against Defendant Alexander

Defendant Alexander has not filed for summary judgment after the filing of Plaintiff's Third Amended Complaint. It appears that all but the retaliation claim against him are likely appropriate for resolution on summary judgment, as the retaliation claim appears to be the only

one involving a genuine dispute of material fact. Clearly, based on the Court's ruling today, the substantive due process based on the imposition of dietary restrictions should be resolved on summary judgment. The Court would find it helpful for Defendant Alexander to file a motion for summary judgment on at least this claim, pursuant to Rule 56(c), and any of the other claims he deems appropriate.[4]

### III. Cross Motions for Partial Summary Judgment on Substantive Due Process Claim Against Defendant Burns

Defendant Burns served as medical director between Defendant Alexander's terms, from March 2012 to July 2013. Plaintiff alleges that upon assuming the Medical Director position in March 2012, Defendant Burns continued Defendant Alexander's Diet Tray Policy and No Commissary Policy. Plaintiff alleges that on August 2, 2012, after he declined the diet tray and requested a regular tray, Defendant Burns personally instructed staff members not to provide Plaintiff with a regular tray but instead not to bring him any food at all, which he calls the "Starvation Policy." He alleges this "Starvation Policy" continued for the next eighteen days, and ended on August 20, 2012 when she allowed the staff to provide Plaintiff with a regular tray and discontinued the Diet Tray Policy.

Plaintiff brings the following claims against Defendant Burns: (1) Fourteenth Amendment Due Process violation of Plaintiff's right to refuse medical services by refusing the special medical diet and accessing the regular meal trays and commissary food generally

---

[4] Rule 56(f) provides, "[a]fter giving notice and a reasonable time to respond, the court may: . . . (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." The Advisory Committee Notes on the 2010 Amendments suggest, "[i]n many cases, it may prove useful first to invite a motion; the invited motion will automatically trigger the regular procedure of subdivision (c)."

available to other inmates at DeBerry; (2) First Amendment retaliation for Plaintiff's attempts to exercise his right to refuse a medical diet; (3) Fourteenth Amendment Due Process violation for placing Plaintiff in punitive segregation and imposing other deprivations because he attempted to refuse medical restrictions and possess commissary items; and (4) Eighth and Fourteenth Amendment violations for unlawfully starving Plaintiff for eighteen days.

The Court interprets both parties' motions (ECF 157, 163) as pertaining only to the first claim enumerated above— the substantive due process claim related to the dietary restrictions imposed on Plaintiff. The parties disagree about what actions Defendant Burns took and what authority she had over various decisions related to dietary restrictions. However, these disagreements of fact are not material to the resolution of this claim. Whatever her role was in enforcing dietary restrictions and whatever her authority was to change those policies, the Court has already held that the imposed food restrictions do not violate Plaintiff's substantive due process rights. Accordingly, Defendant Burns is entitled to judgment on this claim.

Given the Court's resolution of Plaintiff's claim against Defendants Campbell and Woods below, the Court invites Defendant Burns to file a motion for summary judgment on the third claim enumerated above, the claim that she violating his due process rights by disciplining him for violating the food restrictions policies.

## IV.    Cross Motions for Summary Judgment on Claims Against Defendants Woods and Campbell

Plaintiff raises the following claims against both of these defendants: (1) Fourteenth Amendment Substantive Due Process violation for imposition of dietary restrictions; (2) Fourteenth Amendment Due Process violation for "subjecting him to punitive segregation and other deprivations because he . . . possess(ed) commissary items;" and (3) Eighth and

Fourteenth Amendment violations for allegedly starving him for eighteen days. The parties have filed cross motions for summary judgment as to the first claim enumerated above, the claim that the various policies imposing dietary restrictions violated his substantive due process rights. Defendants Woods and Campbell's motion for summary judgment also encompasses the other two claims against them. (ECF 160, 163.)

### A. Defendants' Campbell and Woods' 11th Amendment Immunity Argument

The parties agree that insofar as Defendants Woods and Campbell are sued in their official capacities, these defendants have Eleventh Amendment immunity from Plaintiff's suit under Section 1983 for declaratory relief and damages, and that summary judgment for these Defendants on all claims raised against them in their official capacities is appropriate. Accordingly, the Court will grant judgment on any official capacity claims.

### B. Cross Motions for Summary Judgment on Substantive Due Process Claim for Imposition of Dietary Restrictions

Defendants Woods and Campbell are also sued in their individual capacities. There is no dispute that Defendants Campbell and Woods were correctional officers at DeBerry and that they implemented disciplinary measures against Plaintiff for infractions related to the dietary restrictions, primarily for his possession of disallowed commissary items. Neither of these individuals remains employed at DeBerry. After Defendant Alexander's No Commissary Order, a dialysis patient's possession of commissary food items was considered possession of contraband, a disciplinary offense under TDOC policy. On June 1, 2011, while searching Plaintiff's property, Defendant Woods found commissary food. Defendant Campbell issued a disciplinary report for possession of contraband for this incident. Plaintiff pled guilty to this Class C disciplinary infraction. On November 15, 2011, Defendant Campbell found food

23

commissary in Plaintiff's cell again, while conducting a cell search, and Plaintiff was issued a disciplinary report for this incident. Plaintiff pled guilty to this charge as well.

The Court has already concluded that the food restrictions imposed on Plaintiff do not implicate a protected liberty interest and that, even if a liberty interest were implicated, the restrictions are permissible because they are "reasonably related to legitimate penological interests." *Harper*, 494 U.S. at 223 (1990). Thus, to the extent, if any, that these Defendants bore any responsibility for or authority over the dietary restrictions, the restrictions were constitutionally permissible. Furthermore, even if the food restrictions at issue violated Plaintiff's substantive due process right to be free of unwanted medical treatment, this right was not a "clearly established . . . constitutional right of which a reasonable person would have known," *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Accordingly, these Defendants would have been entitled to qualified immunity if the Court had found a constitutional violation.

Accordingly, for the reasons already articulated, judgment will be entered in favor of Defendants Woods and Campbell on this claim.

### C. Defendants Campbell and Woods' Motion for Summary Judgment on Claim of Fourteenth Amendment Due Process Violation for Disciplining Plaintiff for Possession of Disallowed Commissary Items

Defendants Campbell and Woods move for summary judgment on Plaintiff's claim that the punitive segregation and "other deprivations" violated his due process rights. Plaintiff has not filed for summary judgment on this claim. Although it is unclear from Plaintiff's most recent Complaint to what the phrase "other deprivations" refers, in his response to Defendants' motion for summary judgment, Plaintiff states that "much of Plaintiff's claim against Defendants Woods and Campbell extends not just to those specific instances in which they punished Plaintiff and confiscated his commissary, but also to their role in the everyday enforcement of the 'No

24

Commissary' policy," as well as their maintaining "watchful eyes on Plaintiff to ensure that he did not get hold of any food commissary." (ECF 167, at 7.) As an initial matter, based on the way Plaintiff discusses this claim in his briefs, the Court interprets this, too, as a substantive due process claim, as opposed to a procedural due process claim.

Defendants Woods and Campbell have several arguments about why they are entitled to judgment on this second claim: (1) deprivation of commissary and disciplinary proceedings are not "atypical and significant hardship[s] on the inmate in relation to the ordinary incidents of prison life," *Sandin*, 515 U.S. at 472, and, therefore, do not give rise to substantive due process rights; (2) this claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and its progeny; (3) Plaintiff has failed to exhaust his administrative remedies; (4) they are entitled to qualified immunity.

### 1. *"Atypical and Significant Hardship"*

First, Defendants Woods and Campbell argue that being deprived of commissary and subjected to disciplinary proceedings are not "atypical and significant hardship[s] on the inmate in relation to the ordinary incidents of prison life," *Sandin*, 515 U.S. at 472, and, therefore, do not give rise to substantive due process rights. To be clear, this claim is not a retaliation claim. This claim solely raises the disciplinary actions as an alleged violation of his substantive due process rights to be free of medically-motivated restrictions on his diet, to have access to the commissary, and to be free of segregation imposed for possessing disallowed commissary items.

It is unclear to the Court whether these Defendants had any authority or right not to follow the orders promulgated by the medical director. But given the Court's holding that the dietary restrictions imposed on Plaintiff are lawful, the imposition of punishment for possessing food in violation of the No Commissary Policy is also permissible. Further, even if the Restricted

25

Commissary or No Commissary policies were a violation of substantive due process, and even if these defendants' roles were such that they could be liable for the substantive due process violation of imposing a restricted diet, after *Sandin*, being placed in solitary confinement does not necessarily implicate a protected liberty interest, and nothing about the implementation of solitary confinement in this situation raises this punishment to one which implicates a protected liberty interest. *See id.* at 473 ("[Plaintiff's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."); *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) ("[W]e agree with the district court that under *Sandin* a liberty interest determination is to be made based on whether it will affect the overall duration of the inmate's sentence and there is no evidence here that segregation will impact plaintiff's sentence.").

## 2. *Heck v. Humphrey*

Relatedly, the Court agrees with these Defendants' argument that Plaintiff's claim related to discipline imposed on him for possession of disallowed commissary is barred by the doctrine established in the *Heck v. Humphrey*, 512 U.S. 477 (1994), and the line of Supreme Court cases following *Heck*:

> [Our] cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Wilkinson v. Dotson*, 544 U.S. 74, 81--82 (2005). The disciplinary actions of which Defendant complains and to which he pled guilty have not been invalidated. Nor, in this Court's view, is it likely these guilty pleas could have been invalidated. The food restrictions are permissible, and

Case 3:11-cv-00751   Document 182   Filed 09/30/14   Page 26 of 33 PageID #: 1411

as such, possession of disallowed commissary items was an infraction appropriate for disciplinary consequences under TDOC policy.

### 3.    Exhaustion of Administrative Remedies

The Court disagrees with Defendants Woods and Campbell's assertion that judgment should be entered on Plaintiff's two substantive due process claims because he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act. 42 U.S.C. § 1997e(a). When Plaintiff initially grieved the No Commissary Policy in 2008, the response to the grievance was, "This is considered a medical order and I nor anybody at this institution can change this order legally." (ECF 164-8, at 5.) The Court agrees with Plaintiff that this response indicates the prison staff's position was that the issue was non-grievable, which excuses his failure to exhaust his remedies may be excused. *See Giano v. Goord*, 380 F.3d 670 (2nd Cir. 2004) (holding "special circumstances" justified plaintiff's failure to exhaust based on his reasonable interpretation of Department of Correction policy); *Lane v. Doan*, 287 F. Supp. 2d 210 (W.D.N.Y. 2003) (holding a "plaintiff may proceed despite nonexhaustion where he has been led to believe by prison officials that his alleged incident was not a "grievance matter. . . ."); *Taylor v. Swift*, No. 12-cv-5623, 2014 WL 2118431 (E.D.N.Y. May 21, 2014) ("The PLRA's exhaustion requirement does not apply where the incarcerated plaintiff's failure to exhaust available administrative remedies results from a reasonable though mistaken interpretation of [prison] regulations" regarding whether an assault could be resolved through the grievance procedure.)

Defendants Woods and Campbell object that, in the Sixth Circuit, an inmate cannot claim futility to avoid the exhaustion requirement, citing the holding in *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the

27

process before completion and claim that he has exhausted his remedies or that it is futile for him to do so. . . .").  The prisoner in the *Hartsfield* case had claimed it was futile for him to exhaust his administrative remedies because he was seeking monetary damages, which are not available under the Michigan prison grievance procedures. But the Sixth Circuit has held "that a grievance procedure is not 'available' even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it." *Brock v.  Kenton Cnty*, 93 Fed. Appx 793, 798 (6th Cir. 2004) (collecting cases); *see also¸ Himmelreich v. Federal Bureau of Prisons et al.*, No. 13-4212, 2014 WL 4413214 at *1 (6th Cir. September 9, 2014) ("[W]e have excused a prisoner's lack of complete compliance [with exhaustion of administrative remedies] when the improper actions of prison officials render the administrative remedies functionally unavailable.").

The Court has already determined that judgment will be entered for Defendants on the first and second claims against them, as enumerated above, but it does find that the Plaintiff was reasonable in interpreting the prison's response to his attempt to grieve the No Commissary policy as an assertion that the complaint was not one that could be resolved by the usual grievance procedures. Thus, if the Court were not entering judgment in Defendants favor on these claims, Plaintiff would not be precluded from obtaining relief for not pursuing administrative remedies in light of the prison's indication to him that this matter could not be resolved in that manner.

### 4.    Qualified Immunity

Last, the Court agrees with Defendants Woods and Campbell that if the Court had found that they violated Plaintiff's constitutional rights by disciplining him for possession of disallowed commissary items, they would have been entitled to qualified immunity.  The Supreme Court has set forth a two-part inquiry for determining whether qualified immunity will

28

operate as an "immunity from suit" in a given case. "[T]he first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation is established, the court must address whether the right was clearly established . . . on a . . . specific level." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). Assuming a constitutional violation is established, the Court must undertake the second inquiry to determine whether the violation was clearly established at the time of the official's actions. "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. . . . 'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Saucier*, 533 U.S. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). It would not be clear to a reasonable correctional officer that it would be unlawful to discipline an inmate for having food commissary that the medical director of the prison had instructed the staff he was not allowed to possess because of his medical needs. Accordingly, these Defendants would have been entitled to qualified immunity if the Court had found a constitutional violation.

## V.     Defendants McConnell and Steele's Motions for Summary Judgment

Defendant McConnell was the Health Administrator from April 2010 to October 2012. Defendant Steele was the warden of DeBerry from September 2011 to June 2013. Plaintiff raises the same claims against each of these defendants as he raised against Defendants Woods and Campbell: (1) Fourteenth Amendment Substantive Due Process claim for imposition of dietary restrictions; (2) Fourteenth Amendment Due Process claim for "subjecting him to punitive segregation and other deprivations" by imposing on him dietary restrictions; and (3) Eighth and Fourteenth Amendment violations for allegedly starving him for eighteen days. Plaintiff brings

29

the following additional claim against Defendant McConnell: (4) Eighth Amendment claim alleging McConnell violated his right to be free of cruel and unusual punishment through indifference to his medical needs.

Again, the parties agree that insofar as they are sued in their official capacity, Defendants McConnell and Steele have Eleventh Amendment immunity from suit for declaratory relief and damages. Accordingly, the Court will grant judgment on any official capacity claims.

To the extent that Plaintiff raises the first two claims against these defendants in their individual capacities, the Court will grant Defendants McConnell and Steele judgment on these claims on the basis that the food restrictions did not violate Plaintiff's constitutional rights, for the reasons already set forth herein.

In the alternative, even if the food restrictions did constitute a violation of Plaintiff's constitutional rights, the allegations against Defendants McConnell and Steele fail for lack of personal involvement in the incidents at issue. The Sixth Circuit has held

> § 1983 liability must be based on more than respondeat superior, or the right to control employees. *See Hays v. Jefferson County, Ky*., 668 F.2d 869, 874 (6th Cir.1982). Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers*." Id.

*Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999).

As to the first and second claims against McConnell for allegedly imposing food restrictions and disciplining infractions of the food restriction policies, the Court finds no evidence that the active performance of McConnell's job involved participation in or authority over the food restrictions imposed on Plaintiff. Plaintiff points to a deposition by Defendant

Alexander in which he states that the medical staff held meetings to discuss health issues and that various staff members provided input about the ways to handle inmates' medical needs. (ECF 167-1, at 3.) Plaintiff also points to Defendant Burns' deposition, in which she said, "The health services administrator . . . was the supervisor even of the nonclinical supervisor, even of the nurse practitioners. He was their boss. I was their clinical boss. He was their administrative boss. The same way with the nurses and the nursing department, the entire place answered to Tim [McConnell]." (Id.). The portion Defendant Alexander's deposition to which Plaintiff points does not even specify that Defendant McConnell was present at those meetings, nor does Plaintiff point to any other evidence that indicates that McConnell was present at those meetings or, indeed, any discussions related to the food-restriction policies. The citation to Defendant Burns' deposition is also not helpful to Plaintiff. Defendant Burns makes clear that *she*, as medical director, was the clinical supervisor of the medical staff and that Defendant McConnell's function was merely administrative. Even if Defendant McConnell was present at those meetings, there is simply no evidence that he was a direct participant in the development of the food-restriction policies, the implementation of those policies, or the discipline for the violations of those policies, in the manner required for imposition of liability under Section 1983. Defendant McConnell is entitled to summary judgment in his favor as to Plaintiff's substantive due process claims related to food restrictions and discipline for possession of commissary items.

As to the first and second claims against Defendant Steele for the imposition of and discipline related to the food restrictions, Plaintiff only argues that the warden had a position of authority, that Plaintiff spoke to her about the food-restriction policies and asked her to intervene to prevent the correctional officers from confiscating his commissary and initiating disciplinary sanctions against him, and that she failed to intervene to stop the implementation of the policy or

the discipline for the related infractions. (ECF 167, at 3.) Thus, even if the imposition of the food restrictions and the imposition of discipline for violations of the food restrictions were unconstitutional, and the Court concludes they were not, Defendant Steele was not personally involved such that she could be held liable under Section 1983. She too is entitled to summary judgment on the first two claims enumerated above.

As to the third claim raised against both Defendants McConnell and Steele and the fourth claim raised only against Defendant McConnell, Plaintiff provides no evidence that they were personally involved, and does not address these claims at all in his response to the motion for summary judgment filed by these Defendants. (ECF 167, at 3--4.) The Court will grant Defendants' motion for summary judgment on this these claims.

For the foregoing reasons, the Court will grant judgment to Defendants McConnell and Steele on all claims raised against them in this matter.

## VI. Plaintiff's Motion for Preliminary Injunction

Plaintiff has moved for a preliminary injunction requiring Defendants to allow him to reject restrictions on his ability to purchase and possess commissary. The Court has ruled that he does not have a right to be free of dietary restrictions imposed for medical purposes and will enter judgment in favor of the Defendants on the claims related to this issue. This motion will be denied as moot.

## CONCLUSION

For the foregoing reasons, the Court will take the following actions on the pending motions:

(1) deny Plaintiff's Motion for Summary Judgment Against Defendant Alexander as to Liability for Violation of Plaintiff's Fourteenth Amendment Right to Refuse a Medical Diet (ECF 117);

(2) deny Plaintiff's Second Motion for Preliminary Injunction (ECF 127);

(3) grant Defendant Burns' Motion for Partial Summary Judgment on Claim that she violated his Fourteenth Amendment Substantive Due Process Claim by imposing dietary restrictions (ECF 156);

(4) grant Defendants Campbell, McConnell, Steele, and Woods' Motion for Summary Judgment on all claims raised against them (ECF 159); and

(5) deny Plaintiff's Motion for Partial Summary Judgment for Violation of His Right Against Forced Medical Treatment Against Defendants Alexander, Burns, Woods, and Campbell (ECF 162).

An appropriate order shall issue.

_____
KEVIN SHARP
UNITED STATES DISTRICT JUDGE

33