IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TONY WOLFE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:11-cv-0751 |
| ) | |
| PAUL ALEXANDER et al., ) | Chief Judge Sharp |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Before the Court is the Motion for Summary Judgment (ECF No. 187) filed by defendants Dr. Paul Alexander and Dr. Roberta Burns. The motion has been fully briefed by both parties. For the reasons set forth herein, the Court will grant the motion and dismiss the claims against defendants Alexander and Burns in their entirety.

In addition, insofar as claims remain pending against other defendants, those claims too are subject to summary dismissal. This action will therefore be dismissed in its entirety.

### I.  STATEMENT OF RELEVANT FACTS

The facts are set forth more exhaustively in the Memorandum issued by the Court on September 20, 2014 (ECF No. 182). Only those facts relevant to the currently pending motion are set forth herein.

Plaintiff Tony Wolfe has been a state inmate incarcerated at the Lois M. DeBerry Special Needs Facility ("DeBerry"), a prison operated by the Tennessee Department of Correction ("TDOC), since sometime in 2007. He suffers from end-stage renal disease and takes dialysis treatments because of kidney failure. For most of the time that he has been incarcerated at DeBerry, he has been housed in unit 15-B with other dialysis-patient inmates.

Defendant Dr. Paul Alexander was the Medical Director at DeBerry from prior to the plaintiff's arrival in 2007 until he was replaced by Dr. Roberta Burns in March 2012. Burns served as Medical Director at DeBerry from March 2012 to July 2013, at which time Alexander returned to the position. It is undisputed that, from before Wolfe arrived at DeBerry in 2007 until August 20, 2012, when defendant Burns terminated it, the defendants enforced a policy (the "Renal Diet Policy") that required dialysis-

patient inmates, including the plaintiff, to follow a special renal diet and to receive special renal-diet food trays. Pursuant to the Renal Diet Policy, the plaintiff and other dialysis-patient inmates were not permitted to refuse the special trays against medical advice ("AMA") and to receive instead the meals provided to the general prison population. In addition, also pursuant to the Renal Diet Policy, dialysis-patient inmates were prohibited from purchasing or possessing any foods from the prison commissary that were not on a list of pre-approved items.

On July 12, 2007, the plaintiff filed his first grievance related to the Renal Diet Policy, protesting that the food he was receiving pursuant to the Renal Diet Policy was not appropriate for renal patients generally and not tailored to his needs specifically and asking to "speak with the (dietician) immediately about this matter." (ECF No. 191-3, at 1.) Alexander was not referenced on the grievance.

On July 27, 2007, B.J. Rhodes (who is not identified in this lawsuit) issued a memorandum to "All Staff" at DeBerry referencing "Commissary Against-Medical-Advice." (ECF No. 191-2.) In this memorandum (the "July 27, 2007 Memo"), Rhodes stated:

> After discussion with Dr. Alexander on 7/26/07, the issue of whether or not inmates are allowed to refuse special Commissary orders with an A.M.A. [form], then receive a regular order, is under these guidelines:
>
> As per Dr. Alexander, "If an inmate wishes to A.M.A. their special Commissary order, there will be NO Commissary AT ALL. Commissary is a privilege."

(*Id.*)

On August 9, 2007, the "15-B Inmate Representative" (who is not identified) sent a memorandum to "Mrs. Graves, Dietitian," reporting that the dialysis patients housed on 15-B were not happy with the diet choices being offered to them, both on the basis that the renal diet with which they were required to comply did not actually conform with the dietary requirements of renal patients and on the basis that the diet was not tailored to each individual patient. (ECF No. 191-3, at 4–5.) The inmates received no response to this memorandum.

On September 4, 2007, the plaintiff filed a grievance detailing the efforts he had made since July 7 to speak with "the Dietician Mrs. Graves" and also to address his issues with the Renal Diet Policy/ (ECF No. 191-3, at 6.) Alexander was not referenced in this grievance either.

In November 2007, the plaintiff and several other renal-patient inmates filed a "class-action" grievance, asserting that their civil rights were being violated and that prison officials were deliberately

indifferent to their serious medical needs as a result of their not being allowed to sign an AMA form and reject the renal diet tray. Mark King, Director of Health Services at DeBerry, responded to the grievance stating that the renal diet was part of the "over-all treatment plan" for renal patients. The grievance was denied in December 2007 after a hearing. (ECF No. 191-3, at 10–23.) The denial was affirmed on appeal. (ECF No. 1, at 17.) Again, Alexander was not referenced in the grievance and apparently had no involvement in its resolution.

Almost a year later, on September 8, 2008, Alexander issued a memorandum (the "No Commissary Memo") to the Security Unit, Nursing Unit, and Unit Coordinator for 15B stating: "Effective immediately dialysis patients are no longer allowed to have and/or purchase food from commissary." (ECF No. 191-4.) This new policy (the "No Commissary Policy") meant that the plaintiff, like the other dialysis-patient inmates, was no longer permitted to purchase any commissary food items.

The plaintiff filed this lawsuit in early August 2011 under 42 U.S.C. § 1983 against numerous defendants, asserting generally that the implementation and maintenance of the Renal Diet and No Commissary Policies violated the plaintiff's constitutional rights. After counsel entered an appearance for the plaintiff in June 2013, the plaintiff, through counsel, filed a Third Amended Complaint. In his Third Amended Complaint, the plaintiff continues to assert that the implementation and maintenance of the Renal Diet and No Commissary Policies violate his right under the Fourteenth Amendment to refuse medical treatment. He also alleges that, after the July 27, 2007 Memo was issued, the plaintiff and other dialysis-patient inmates continued to attempt to avoid the restrictions on their commissary purchases by signing AMA forms and requesting non-approved commissary. (3d Am. Compl., ECF No. 119, at ¶ 5.) He claims that "[p]art of Dr. Alexander's motivation" for issuing the No Commissary Memo in September 2008 and for continuing to maintain the "No Commissary Policy" thereafter was "to retaliate against Plaintiff Wolfe . . . for grieving the previous policy and attempting to A.M.A. [his] special commissary orders." (*Id.* ¶ 6.) The plaintiff further alleges that "Dr. Alexander's continued preservation of [the Renal Diet and No Commissary Policies] was, in part, a means of retaliation against Plaintiff Wolfe for the filing of diet-policy related grievances, A.M.A.'s, and this lawsuit." (*Id.* ¶ 9.)

In their statement of undisputed facts in support of their motion for summary judgment, the defendants assert that Alexander did not implement the 2008 policy in retaliation against Wolfe and that

Alexander was not involved in decisions regarding inmate discipline. (ECF No. 190, ¶¶ C, F (citing Alexander Decl., ECF No. 140-3).) The defendants also assert that the plaintiff's "only proof of causation in his retaliation claim is his subjective belief." (ECF No. 190, at ¶ A.) The plaintiff denies this statement, asserting that "circumstantial evidence" indicates that the No Commissary Policy was retaliatory, specifically the fact that he and other inmates had filed grievances in response to the Renal Diet Policy that restricted their food commissary purchases to pre-approved items. (Pl.'s Resp. to Defs.' Statement of Undisp. Facts, ECF No. 191-1, at ¶ A.) The plaintiff states: "The July 27, 2007 memo made clear that Dr. Alexander planned to take away the renal inmates' commissary privileges altogether if they continued to complain about their limited commissary privileges." (*Id.*) The plaintiff also asserts that he and others "continued grieving the limited commissary policy, along with the rest of the renal diet policies." (*Id.* (citing grievances attached as exhibits to response).) The plaintiff maintains that Alexander retaliated in response to the inmate grievance by acting "[t]rue to his word," that is, by putting into effect the warning set forth in the July 27, 2007 Memo and implementing the No Commissary Policy. (Pl.'s Resp. to Defs.' Statement of Undisp. Facts, ECF No. 191-1, at ¶ A.)

The plaintiff also alleges that, in implementing the No Commissary Policy, Alexander instructed DeBerry personnel to punish Wolfe and other dialysis-patient inmates caught in possession of commissary as if it were contraband. (ECF No. 119, at ¶ 7.) As a result, the petitioner was subjected to placement in punitive segregation for being caught in possession of commissary. (*Id.*) There is no dispute that Wolfe was found in possession of commissary items on two occasions in 2011 and charged with possession of contraband. (*See* J. Campbell Aff., ECF No. 159-5, ¶¶ 5–6.) Wolfe pleaded guilty to both infractions and was punished for each infraction by being placed in segregation for ten days. (*Id.*; *see also* Wolfe Dep., ECF No. 189, at 14–16.) In response to the defendants' assertion that the plaintiff has no evidence that Alexander directed that he be punished for possessing commissary or that Alexander had any participation in decisions involving inmate discipline, the plaintiff asserts that, by prohibiting dialysis-patient inmates from possessing food commissary, Alexander "made possession of commissary items a 'contraband' offense for Wolfe and other renal inmates. Thus, Alexander effectively directed DeBerry staff to discipline Wolfe if they found him in possession of commissary items." (Pl.'s Resp. to Defs.' Statement of Undisp. Facts, ECF No. 191-1, at ¶ B (citing September 2008 Memo).)

In his deposition, however, the plaintiff admitted initially that the No Commissary Policy, memorialized in the No Commissary Memo, was his only basis for believing that Alexander was retaliating against him and that, up until the issuance of that memo, he had never even heard of Alexander. (Wolfe Dep., ECF No. 189, at 45:12–20.) He then admitted that he did not really believe the No Commissary Policy *per se* was retaliatory but that his being punished for violating it was. In that regard, he stated:

> Well, I don't really think that [No Commissary Policy] was retaliation against me. What I think it was a dietitian had left here. See, we had a dietitian. Her name was Ms. Gay. When she was here she had a commissary sheet in place for dialysis patients, for diabetics, and regular sheets. And she monitored what we eat.
>
> And according to our lab work monthly – they take monthly lab work. If our protein low, she adjusted our meals and the way we order commissary with this. Well, then she left, there wasn't nobody in place that really knew what dialysis patients could eat. So instead of him consulting with somebody or something of that nature, he just said look, until we get another dietitian, this is what it is and it's no commissary at all for dialysis patients, no purchasing and no having it. And if you caught with it as a dialysis patient, you could be wrote up and taken to the hole [punitive segregation].
>
> So when it went to the extreme of me going to the hole for having commissary, I felt that was retaliation toward me. To be locked up and do hole time for some food items that in my heart I felt like I could have – because as a dialysis patient, it don't say we can't eat this or that. It just say eat it in moderation. Bur for you to take the extreme and cut me out of everything. I didn't understand that and that's why I felt it was retaliation.

(*Id.* 47:1–48:8.)

Dr. Burns replaced Dr. Alexander as Medical Director at DeBerry in March 2012. Upon assuming this role, she maintained the Renal Diet Policy and the No Commissary Policy. The plaintiff alleges in his Third Amended Complaint that, on August 2, 2012, the plaintiff "exercised his right to decline a special medical diet and requested a regular tray instead." (ECF No. 119, ¶ 16.) The plaintiff states that the DeBerry staff, at Burns' directive, refused to provide him with a regular tray and "instead provided him with *no food at all*." (*Id.*) The plaintiff refers to this as the "Starvation Policy" and insists that Burns "continued the 'Starvation Policy' for the next eighteen days." (*Id.*) The plaintiff admitted that he was offered and refused to accept the renal diet trays. (Wolfe Dep., ECF No. 189, at 37:3–12.) This went on until August 20, when prison officials relented and let the plaintiff sign the AMA form and begin receiving the regular diet tray. The plaintiff states that he survived the eighteen days of refusing renal diet trays by accepting food from other inmates.

Burns testified via declaration: "I have never starved Wolfe or any patients by refusing to feed them. If Wolfe has not received a food tray, it is because he has refused his tray at mealtime." (Burns

Decl., ECF No. 140-2, at ¶ 24.)

Finally, the plaintiff alleges in the Third Amended Complaint that Burns implemented a "No Incentive Meals Policy." Incentive meals are "special meals that Deberry inmates can earn through good behavior. working hard, and other positive endeavors." (ECF No. 119, at ¶ 19.) The plaintiff claims that Burns prohibits Wolfe and other dialysis-patient inmates from receiving incentive meals based on their medical conditions "regardless of the inmates' efforts to A.M.A. such restrictions." (*Id.*) In his deposition, the plaintiff stated that he believed there was a memorandum documenting that dialysis patients were not to receive incentive meals. He could not recall who put such a policy in place but believed vaguely that Burns continued the policy. When asked what incentive meal had been offered to other inmates but not to him during Burns' tenure at DeBerry, the plaintiff dimly recalled one instance when the prison was going to let the inmates order fried chicken.

Burns denies implementing a No Incentive Meals Policy. She states in her declaration: "I do not have a 'no incentive meals' policy. I have no control over who qualifies for incentive meals." (Burns Decl., ECF No. 140-2, at ¶ 32.) Instead, she simply determines if a proposed meal would cause problems for inmates' health. (*Id.*) The plaintiff attempts to refute Burns' statement regarding incentive meals by pointing to her deposition testimony in which, according to the plaintiff, she "admitted that she did restrict incentive meals based on medical concerns." (Pl.'s Resp. to Defs.' Statement of Undisp. Facts, ECF 191-1, at ¶ G (citing Burns Dep. 50:11–51:18).) In the deposition excerpt to which the plaintiff points, Burns actually stated as follows:

> I only remember being asked about two incentive meals. One of them was subs and I said, regular Italian cold cuts are – there's probably too much sodium on those for the renal patients, but they can have it if they stick to turkey, roast beef. The other one was the chicken, and we kicked the chicken thing around . . for a long time. . . . But that one, I kicked around with the dietician and said, Look, if we restrict it to $10 or $15 (worth of chicken), then the renal patients won't have enough salt or enough protein to get into trouble, and there won't be any left over by Sunday.
>
> So we said, yes, they could have it. That was the restriction, that nobody could spend more than – I don't' remember whether it was $10 or $15. . . . But those are the only two I remember being asked about. I do not remember any others. And both of those, we said the renal patients could participate with those restrictions.

(Burns Dep., ECF No. 191-5, at 50:11–51:18.)

## II. RELEVANT PROCEDURAL HISTORY

Proceeding *pro se* and *in forma pauperis*, plaintiff Tony Wolfe filed this action under 42 U.S.C. §

1983 on August 5, 2011, alleging violations of his constitutional rights while in TDOC custody. He filed an Amended Complaint on September 7, 2011. The defendants identified in the initial and first amended complaints were Dr. Paul Alexander, Monique Taylor, Debra Johnson, Ronald [sic] Colson,[1] Jennie Jobe, Clifford Woods, Tia Moore, Julia Campbell, Mark King, Tim McConnell, and Lois M. DeBerry as "owner of facility" where the plaintiff was incarcerated. Although Jewell Steele was not actually listed as a defendant, the plaintiff completed a summons form to be served upon her in which he identified her as "successor" to defendants Jennie Jobe and Roland Colson. (*See* Summons, ECF No. 35 ("Jewel Steele is successor to Jennie Jobe and Roland Colson. Serve current successor to T.D.O.C. Warden's Office (FRCP 25) DeBerry Special Needs Facility.").) Similarly, although she was identified as a defendant, the summons served upon Debra Johnson stated that she was served as "current successor to the T.D.O.C. Office of Deputy Warden at the DeBerry Special Needs Facility (FRCP 25))." (ECF No. 59.)

In July 2012, the plaintiff filed a Motion for Joinder, which the magistrate judge interpreted as a motion to amend the complaint to add Dr. Roberta Burns as a defendant. The magistrate judge granted this motion on December 6, 2012. On December 31, 2012, the plaintiff filed his Second Amended Complaint, which simply incorporated by reference the original and first-amended complaints and added new factual allegations against Burns.

In June 2012, counsel entered an appearance on behalf of the plaintiff and filed a motion seeking permission to file an amended complaint for the purpose of "organiz[ing], unify[ing], and clarify[ing]" the plaintiff's factual allegations and claims for relief. (ECF No. 116.) The magistrate judge granted permission, and the plaintiff, through counsel, filed his Third (and final) Amended Complaint on June 13, 2013. (ECF No. 119.) The Third Amended Complaint superseded for all purposes the prior complaints. *See Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 617 (6th Cir. 2014) ("Generally, amended pleadings supersede original pleadings.").

In this Third Amended Complaint, the plaintiff named as defendants Paul Alexander, Roberta Burns, Debra Johnson,[2] Roland Colson, Jewel Steele, Clifford Woods, Julia Campbell, and Joel

---

[1] This defendant was identified in the summons as "Roland" Colson. The Court takes judicial notice that Roland Colson is a former DeBerry warden.
[2] The Third Amended Complaint, like its predecessors, lists Debra Johnson as a defendant but does not include any factual allegations identifying her or asserting any facts suggesting that she was involved in the actions giving rise to the plaintiff's claims.

McConnell. (ECF No. 119, at 1.) The complaint itself also expressly asserts claims against Jennie Jobe.[3] Besides clarifying some of the plaintiff's claims, the Third Amended Complaint asserts new legal claims and factual allegations, including that defendants Alexander and Burns had taken action in their capacity as Medical Directors at DeBerry to implement and maintain the Renal Diet Policy and No Commissary Policy and that defendants Julia Campbell and Clifford Woods, correctional officers at DeBerry, were liable for having enforced the Medical Directors' policies through disciplinary actions against the plaintiff. The claims against the other defendants were based on their alleged complicity in Alexander's and Burns' allegedly unlawful actions.

Thereafter, the plaintiff filed two separate motions for partial summary judgment and a motion for preliminary injunction. Defendant Burns filed a motion for partial summary judgment, and defendants Campbell, McConnell, Steele, and Woods filed a motion for summary judgment. After vacating the order of referral to the magistrate judge on the basis that the plaintiff was now represented by counsel, the Court entered an order denying the plaintiff's motions, granting defendant Burns' motion for partial summary judgment on the issue of whether she had violated the plaintiff's Fourteenth Amendment right to due process by imposing dietary restrictions, and granting defendants' Campbell, McConnell, Steele, and Woods' motion for summary judgment as to all claims asserted against them. (*See* ECF No. 183 (order).)

In the memorandum accompanying the order (ECF No. 182) (the "September 2014 Memorandum"), the Court specifically interpreted the plaintiff's Third Amended Complaint as asserting four § 1983 claims against Alexander: (1) that enforcement of the Renal Diet Policy violated the plaintiff's Fourteenth Amendment substantive due process right to refuse medical services by refusing the special medical diet and accessing the regular meal trays and commissary food generally available to other inmates at DeBerry; (2) that continuing the Renal Diet Policy, failing to provide the plaintiff with medical education and counseling as to his dietary needs, and disciplining him for possessing unapproved commissary items constituted First-Amendment retaliation against the plaintiff for his attempts to exercise his right to refuse a medical diet and filing grievances related to the Renal Diet Policy; (3) that subjecting

---

[3] The Court had previously granted defendant Monique Taylor's motion for summary judgment, dismissing with prejudice the claims against her, in May 2013. (ECF No. 109.) Tia Moore, Mark King, and Lois M. DeBerry as "owner of facility" were not named or referenced as defendants in the Third Amended Complaint. The claims against these defendants are therefore deemed to be abandoned.

the plaintiff to punitive segregation and other deprivations because he exercised his right to refuse medical restrictions and possess commissary items constituted a Fourteenth Amendment Due Process violation; (4) that the defendant's failure to assist the plaintiff with developing a diet that would appropriately meet his medical needs constituted deliberate indifference to the plaintiff's serious medical needs in violation of his rights under the Eighth and Fourteenth Amendments to be free of cruel and unusual punishment.

The Court, however, construed the plaintiff's motion for summary judgment as to defendant Alexander as addressing only the first enumerated claim: that enforcement of the Renal Diet Policy violated the plaintiff's right to due process. The Court denied the plaintiff's motion, specifically holding that the dietary restrictions imposed upon the plaintiff for medical reasons did not implicate substantive due-process concerns and did not violate the plaintiff's constitutional right to substantive due process and that, even if the restrictions might implicate due-process concerns, the restrictions were permissible because they were reasonably related to legitimate penological interests. The Court effectively invited defendant Alexander to file his own motion for summary judgment as to that claim and "any of the other claims he deems appropriate" for summary resolution. (ECF No. 182, at 21.)

Both the plaintiff and defendant Burns moved for partial summary judgment as to the plaintiff's claims against Burns. Also in the September 2014 Memorandum, the Court construed the Third Amended Complaint as asserting essentially the same four § 1983 claims against Burns as those against Alexander, but interpreted the cross-motions for summary judgment as addressing only the first claim against Burns—the substantive due-process claim related to the dietary restrictions imposed on the plaintiff. Although the parties disagreed as to what actions Burns took and what role she had in enforcing the Renal Diet Policy, the Court found that Burns was entitled to summary judgment in her favor on the basis that the dietary restrictions did not violate the plaintiff's right to substantive due-process, for the same reasons that the same restrictions imposed by Alexander were not unconstitutional. (ECF No. 182, at 22.) At the same time, the Court invited Burns to file a motion for summary judgment on the claim that she violated the plaintiff's due-process rights by disciplining him for violating the food restriction policies.

Defendants Woods and Campbell, correctional officers at DeBerry, were sued on the basis that they implemented disciplinary actions against the plaintiff for violating the No Commissary Policy. The

claim was based upon the premise that the No Commissary Policy violated the plaintiff's Fourteenth Amendment right to substantive due process and therefore that punishing him for those infractions likewise violated his constitutional rights. The Court denied the plaintiff's motion for partial summary judgment and granted defendants Woods and Campbell's summary judgment motion in its entirety for several reasons, including that the No Commissary Policy did not implicate a protected liberty interest and, therefore, that disciplining the plaintiff for violating it did not violate his constitutional rights.

Defendant McConnell was Health Administrator at DeBerry from April 2010 to October 2012. Defendant Steele was warden of DeBerry from September 2011 to June 2013. The Court granted these defendants' motion for summary judgment in its entirety on the basis that the plaintiff failed to establish that the dietary restrictions violated his constitutional rights, as discussed above, and because the plaintiff failed to establish as a factual matter that these defendants were personally involved in the actions giving rise to the plaintiff's claims. The Court also found that, insofar as the plaintiff sought to sue Steele or McConnell (or any other defendant) in his or her official capacity, the defendants, as state employees, were immune from relief from suit for damages or declaratory relief.

As a result of the Court's September 2014 ruling on the above-referenced motions, all claims asserted against defendants Alexander in the Third Amended Complaint remain pending, as do some of the claims against defendant Burns.

All claims against defendants Woods, Campbell, McConnell, and Steele were dismissed. However, the claims against defendants Debra Johnson, Jennie Jobe, and Roland Colson technically remain pending, having never been addressed by the Court.

Defendants Alexander and Burns now move for summary judgment in their favor as to all claims asserted against them. The motion has been fully briefed.

### III.     SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also Amini v. Oberlin College*, 440 F.3d

350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp.*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734–35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813–14 (6th Cir. 2006) (citations omitted). In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## IV.    THE CURRENT MOTION FOR SUMMARY JUDGMENT

In the present motion for summary judgment, Alexander and Burns implicitly refer to the Court's itemization of the claims against them in the September 2014 Memorandum and move for summary judgment in their favor as to all claims asserted against them. They argue specifically that:

> (1) Alexander is entitled to summary judgment on Wolfe's claim that the Renal Diet Policy and No Commissary Policy violated liberty interests protected by the Fourteenth Amendment (the same claim against Burns having already been dismissed);
>
> (2) Alexander and Burns are entitled to summary judgment on Wolfe's claims that punishing him for violating the dietary restrictions violated his constitutional rights;
>
> (3) Alexander and Burns are entitled to summary judgment on Wolfe's claims that the defendants engaged in retaliatory conduct;
>
> (4) Alexander and Burns are entitled to summary judgment on the plaintiff's claim that they violated his Eighth Amendment right to be free from cruel and unusual punishment; and
>
> (5) Burns is entitled to summary judgment on the plaintiff's claims that the No Incentive Meals Policy violated the plaintiff's constitutional rights.

(*See* ECF No. 188, at 1–2 (identifying issues).)

The Court finds, for the reasons set forth exhaustively in the September 2014 Memorandum Memorandum (ECF No. 182), that defendant Alexander is entitled to summary judgment in his favor as to the plaintiff's claim that the Renal Diet and No Commissary Policies violated the plaintiff's liberty interests protected by the Fourteenth Amendment. Likewise, also for the reasons set forth in the September 2014 Memorandum, defendants Alexander and Burns are both entitled to summary judgment in their favor on the plaintiff's claims that punishing him for violating the No Commissary Policy violated his rights under the Fourteenth Amendment.

In his response to the defendants' motion for summary judgment, the plaintiff clarifies that he is not asserting a retaliation claim against Burns. Based on the plaintiff's clarification, the Court finds that the complaint does not state a retaliation claim against Burns, obviating the need to consider the defendants' argument that Burns is entitled to summary judgment on that claim.

In addition, in response to the defendants' motion for summary judgment in their favor on the plaintiff's Eighth Amendment claim, the plaintiff states only that he does not offer "any evidence or argument in opposition to the Defendants' motion with respect to this claim," which he characterizes as a "medical neglect" claim. (ECF No. 191, at 3.) As previously noted, summary judgment is appropriate where a party without the burden of proof on a particular claim demonstrates that his opponent, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo*, 398 F.3d at 761. The defendants have made such a showing and the plaintiff has, in response, failed to present any evidence or identify any facts demonstrating a genuine issue for trial. Accordingly, the defendants are entitled to summary judgment in their favor as to this claim.

The only claims against Alexander and Burns that remain to be addressed are (1) the retaliation claim against Alexander and (2) the § 1983 claim against Burns based on the No Incentive Meals Policy.

**V.      ANALYSIS AND DISCUSSION**

  **A.      Whether Alexander is entitled to summary judgment on Wolfe's claims that he engaged in retaliatory conduct.**

As set forth above, the plaintiff's retaliation claim against Alexander is based upon allegations that Alexander implemented and/or maintained the Renal Diet Policy and the No Commissary Policy in retaliation for the plaintiff's attempting to "exercise his right to refuse a medical diet" and continuing to file grievances related that attempt. (ECF No. 119, at ¶ 3.) In his Third Amended Complaint and in his

deposition, the plaintiff specified that he believed that Alexander retaliated by implementing the No Commissary Policy and then disciplining him for violating it. (*Id.* ¶¶ 6–7.)

To prevail on a retaliation claim, the plaintiff must show that (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) "there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (citations omitted). The Sixth Circuit has also recognized that "it is generally much harder for a prisoner to show that his conduct is protected because prison regulations are allowed to infringe on prisoners' rights as long as they are rationally related to a legitimate penological concern." *Id.* (citing *Turner v. Safley*, 482 U.S. 78 (1987)). Thus, violation of a prison regulation is not protected conduct. *Id.* To establish causation, the plaintiff has the burden of proving by a preponderance of the evidence that the decision to take the adverse action was motivated, at least in part, by the protected conduct, which puts the "subjective motivation of the defendants . . . at issue." *Id.* at 399. The plaintiff's burden of establishing the defendant's subjective motivation is "not insubstantial." *Id.* However, while "[b]are allegations of malice" are not sufficient, the plaintiff can establish causation through circumstantial evidence, including the timing of events. *Id.* If the plaintiff meets his burden of showing a causal connection, the burden of production shifts to the defendant. The defendant may still prevail on summary judgment if he can show that he would have taken the same action in the absence of the protected activity. *Id.*

In this case, the defendants argue that the plaintiff cannot prove his retaliation claim against Alexander because (1) violation of prison rules is not protected conduct; (2) the plaintiff cannot show that Alexander had any involvement in the disciplinary decisions involving the plaintiff; (3) the plaintiff admits that implementation of the No Commissary Policy was not retaliatory; and (4) because the plaintiff admits that the No Commissary Policy applied to all dialysis patients, it could not have been an act of retaliation against the plaintiff. The Court agrees, as discussed below, that the plaintiff cannot establish a causal connection between the protected conduct and the adverse action(s).

First, the Court recognizes that the plaintiff appears to believe (and certainly believed at the time) that, by protesting the dietary restrictions and continuing to fight for the right to sign an AMA form and

obtain a regular diet tray and whatever commissary items he wanted, he was exercising or attempting to exercise his constitutional right to refuse medical treatment. The Court has held, however, that the restrictions on the plaintiff's diet imposed by the Renal Diet Policy and the No Commissary Policy do not implicate liberty interests that are protected by the Fourteenth Amendment. And even if they did, the plaintiff's right to due process was not violated by prison regulations that were rationally related to a legitimate penological concern. (September 2014 Memorandum, ECF No. 182.) Likewise, the plaintiff as a prison inmate did not have a constitutionally protected right to refuse to comply with the prison's No Commissary Policy, even though he disagreed with the policy. As the defendants argue, violating prison rules was not protected conduct. The plaintiff did, however, have a constitutional right to file grievances and this lawsuit arguing that the policies at issue violate prison rules and state and federal law. By filing such grievances and this lawsuit, the plaintiff engaged in protected conduct.

The plaintiff was subjected to an adverse action when he was placed in punitive segregation. Moreover, the Court accepts for purposes of this motion that the implementation and maintenance of the No Commissary Policy itself qualified as an adverse action of the type that would deter a person of ordinary firmness from continuing to engage in the protected conduct, in part because implementation of the policy, as the plaintiff points out, had the effect of making commissary "contraband," possession of which was punishable by placement in punitive segregation.

But the plaintiff fails to establish a causal connection between his engaging in protected activity (filing grievances and this lawsuit) and the adverse actions (the implementation or maintenance of the No Commissary Policy and placement in segregation after being found to have violated prison rules). First, the plaintiff himself conceded in his deposition that he did not really think the No Commissary Policy— either the implementation or maintenance thereof—was motivated by retaliation.[4] Instead, he thought it resulted from the dietitian's leaving the DeBerry staff, which meant there was no one left on site to monitor each dialysis patient individually. (Wolfe Dep., ECF No. 189, at 47:1–8.) As the plaintiff stated: "So instead of him [Alexander] consulting with somebody or something of that nature, he just said look,

---

[4] Clearly, as the magistrate judge found in a Report and Recommendation issued in July 2012, claims related to events that occurred in 2008 are barred by the statute of limitations. (ECF No. 65, at 5.) The plaintiff nonetheless avoided summary judgment at that time on his retaliation claim by alleging that the retaliation was continuing.

until we get another dietitian, this is what it is and it's no commissary at all for dialysis patients, no purchasing and no having it." (*Id.* 47:15–20.)

Even if the plaintiff had not made this concession, the only circumstantial evidence to which he points in support of his claim is the fact that he and other inmates filed grievances against various prison officials (not including Alexander) in the fall of 2007. As the defendants point out, the plaintiff references in the twenty-three pages of grievances attached as an exhibit to his response in opposition to the motion for summary judgment, dating from July, September, and November 2007. (ECF 191-3.) Alexander implemented the No Commissary Policy nearly a year later, in September 2008. The temporal relationship between these events is not sufficiently close that a reasonable jury could infer a causal connection between them solely on the basis of timing, particularly given that there is no evidence in the record that Alexander was even aware of these grievances. *See, e.g.*, *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 550 (6th Cir. 2008) (noting that "previous [Sixth Circuit] cases that have permitted a *prima facie* case to be made based on the proximity of time [alone] have all been short periods of time, usually less than six months" (citations omitted)).

Regarding the plaintiff's claims that his being placed in punitive segregation on two occasions as a result of being found in possession of commissary items was retaliatory, again the plaintiff cannot prove a causal connection. The plaintiff simply has no evidence to refute Alexander's testimony that he had no involvement in decisions regarding inmate discipline.

There are no material issues of disputed fact. Because the plaintiff cannot establish a causal connection between his protected activity and any adverse action against him, defendant Alexander is entitled to summary judgment in his favor on the plaintiff's retaliation claim.

### B. Whether Burns is entitled to summary judgment on the plaintiff's claim that the No Incentive Meals Policy violated the plaintiff's constitutional rights.

In his Third Amended Complaint, the plaintiff alleges that Dr. Burns "maintains a 'No Incentive Meals' policy" pursuant to which the plaintiff and other dialysis-patient inmates are prohibited from receiving incentive meals "because of their medical condition." (ECF No. 119, at ¶ 19.) The plaintiff does not explain how this alleged policy violates his federal rights. In his response in opposition to the defendants' motion for summary judgment, however, the plaintiff expressly states that this claim is a "Fourteenth Amendment claim . . . based on the same legal theory as Plaintiff has articulated in his prior

memoranda." (ECF No. 191, at 3–4 (citations omitted).) [5]

In support of their motion for summary judgment as to this claim, the defendants argue that there is no material factual dispute and that Burns is entitled to summary judgment in her favor, because Burns denies implementing a No Incentive Meals Policy and the plaintiff admitted in his deposition that he does not know who actually implemented the policy. The defendants also argue that, in light of the Court's previous ruling that the prison's diet and commissary policies do not implicate Fourteenth Amendment concerns, even if there were a No Incentive Meals Policy, it would not violate the plaintiff's substantive due-process rights. In response, the plaintiff argues only that Burns admitted in her deposition that "she did restrict the renal inmates' access to incentive meals for medical reasons. Thus, ample evidence exists to support this Fourteenth Amendment Claim. . . ." (ECF No. 191, at 3–4.)

This Fourteenth Amendment claim fails for the same reasons the plaintiff's other Fourteenth Amendment claims failed: The plaintiff does not have a substantive due process right to the diet of his choice, and, even if he did, the defendants have legitimate penological interests in restricting the right. Moreover, the defendants are correct that the factual record does not support the plaintiff's allegation that Burns implemented or maintained a No Incentive Meals Policy. The defendants are entitled to summary judgment in their favor as to this claim as well.

## VI.  OTHER PENDING CLAIMS

Granting defendants Alexander and Burns' motion for summary judgment will not dispose of this case in its entirety, because the claims against defendants Debra Johnson, Ronald Colson, and Jennie Jobe technically remain pending.

The Third Amended Complaint includes allegations that Jennie Jobe and Roland Colson were the Warden and Deputy Warden at DeBerry from August 5, 2010 to September 1, 2011 and as such were responsible for the actions of the personnel under their supervision:

> 29. As Warden and Deputy Warden, Defendants Jobe and Colson were responsible during their tenure for the operations of the DSNF facility and for the actions of its personnel. They were responsible for ensuring that they and other DSNF personnel

---

[5] But for this clarification, the Court might have construed the Third Amended Complaint as asserting a claim that Burns discriminated against the plaintiff and other inmates solely based on their disability. Even construed thus, however, the claim would fail based on Burns' undisputed testimony that she did not implement and was not aware of any No Incentive Meals Policy and, in any event, had no authority to decide which inmates were eligible for incentive meals.

>     complied with Tennessee state law and TDOC Policy.
>
>     30.     From August 5, 2010 to September 1, 2011, Defendants Jobe and Colson were personally aware of Dr. Alexander's illegal dietary policies. Rather than ordering Dr. Alexander to amend the policies to comply with the law, Jobe and Colson were instead complicit in enforcing Dr. Alexander's illegal policies.

(ECF No. 119, at ¶¶ 29–30.)

Debra Johnson is listed as a defendant in the Third Amended Complaint, but the pleading does not contain any allegations identifying her or asserting the basis for the claims against her.

It appears that none of these defendants has been appropriately served. Debra Johnson was served as "Deputy Warden" at DeBerry, and the plaintiff included a "special instruction" as follows: "Serve current successor to the T.D.O.C. Office of Deputy Warden at the Deberry Special Needs Facility (FRCP 25)." (ECF No. 59.) No summons was issued for defendants Colson and Jobe. Instead, the summons issued to Jewel Steele stated, in the space for "special instructions," "Jewel Steele is successor to Jennie Jobe and Roland Colson. Serve current successor to T.D.O.C. Warden's Office (FRCP 25) Deberry Special Needs Facility." (ECF No. 35, at 1.) In other words, it appears that the plaintiff believed he was suing these defendants in their official capacity as warden or deputy warden of the facility, and that he could continue to pursue the official-capacity claims against the person currently holding the office at the time of his suit.

The Court previously dismissed the official-capacity claims against Jewel Steele, for reasons that pertain equally to any official-capacity claims against her predecessors or successors. The Court also dismissed the individual-capacity claims against Steele on the basis that the plaintiff failed to allege her personal involvement in any of the events giving rise to his claims. Likewise, the plaintiff fails to allege the personal involvement of defendants Johnson, Jobe, and Colson.

Accordingly, rather than dismissing the claims against these defendants without prejudice for failure to effect timely service of process, the Court will dismiss the claims against these defendants with prejudice, on the basis that (1) the plaintiff has failed, in the course of the five years that this lawsuit has been pending, to prosecute his claims against these defendants; (2) insofar as the complaint seeks damages or declaratory relief against these defendants in their official capacity, as state officials they are immune from suit under the Eleventh Amendment; and (3) the Fourteenth Amendment claims against these defendants in their individual capacity fail for the same reasons that the same claims against

defendants Jewel Steele, Alexander, and Burns fail; and (4) the complaint fails to state a colorable claim under 42 U.S.C. § 1983 against these defendants because it does not allege their personal involvement in the events giving rise to his claims for damages. 28 U.S.C. § 1915(e)(2)(B)(ii).

## VII. CONCLUSION

For the reasons set forth herein, the defendants Burns and Alexander's motion for summary judgment will be granted and the claims against them dismissed. The still-pending claims against defendants Debra Johnson, Jennie Jobe, and Roland Colson will likewise be dismissed with prejudice. All claims having been resolved, this action will be dismissed in its entirety and judgment entered against the plaintiff.

An appropriate order is filed herewith.

*Kevin H. Sharp*

KEVIN H. SHARP
Chief Judge
United States District Court